STATE OF WEST VIRGINIA

*v.*

CHARLES EDWARD FORTNER

(No. 12538)

Submitted April 26, 1966.          Decided June 7, 1966.

*Kingdon & Kingdon, Arthur Ritz Kingdon,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for defendant in error.

BROWNING, JUDGE:

Charles Edward Fortner, nineteen years of age, was convicted of the offense of entering without breaking in the Circuit Court of Wyoming County on September 15, 1965. A motion to set aside the verdict and award a new

trial was overruled and he was sentenced to a term of from one to ten years in the state penitentiary, to which judgment this Court granted a writ of error and supersedeas on December 6, 1965.

On the trial of the case, the state adduced the evidence of the owner of the drive-in restaurant entered and of two alleged accomplices who testified that Fortner was among those who participated in the entry of the premises and in the larceny of certain articles therefrom. The state then introduced the testimony of a deputy sheriff of Wyoming County who testified that he, the sheriff, another deputy and the chief of police investigated the incident and proceeded to question Fortner in an automobile near the grade school. He then stated: "A. Well, we talked to Charlie a little bit, finally he just told us he was one of them and he named the other boys with him, told what he got, how they got in the place and all." Counsel for Fortner stated: "I want to object to any further questions along this line in order to investigate into the circumstances under which he was interrogated and determine whether the evidence is admissible.", which objection was overruled and counsel then stated: "The basis for the objection is that after these officers took this man into custody and placed him under arrest and accused him of this crime, any interrogation thereafter without advising him of his right to the assistance of an attorney and of the right to be silent violated his right under the Sixth Amendment to the Federal Constitution." The state proceeded to elicit testimony that no threats or offers were made, Fortner was not touched or mistreated and that the statement was voluntary, and counsel for Fortner again moved "to strike the answer and move for a mistrial on the ground that defendant's constitutional rights have been violated" which motions were overruled. The witness then was cross-examined and at the conclusion of his testimony, defendant once again moved for a mistrial which was overruled. The other officers involved testified substantially to the same effect and similar motions for mistrials were made, all of which were overruled. The officer who obtained the confession testified

that he did not advise defendant of his right to remain silent or to consult with counsel.

Defendant offered no evidence, but prior to submission of the case to the jury, renewed his motion for a mistrial and also moved for a directed verdict, both of which motions were overruled.

The controlling issues presented upon this writ of error are: (1) whether it was a violation of the defendant's rights under Article III, Section 5 of the constitution of this state to admit evidence of his oral confession when the evidence showed that prior to making it he was not advised of rights guaranteed to him by Article III, Section 5 of the constitution of this state and, incidentally, of the Fifth Amendment to the Constitution of the United States, the pertinent language of both being substantially the same; (2) whether the court erred in permitting the state to introduce evidence relating to the alleged oral confession of the defendant without first determining in the absence of the jury whether such evidence was admissible; (3) whether it was reversible error for the trial court to admit into evidence and make a part of the record a cigarette lighter found upon the person of the defendant approximately twenty-four hours after the alleged entering without breaking of the drive-in restaurant; (4) whether it was reversible error for the court to give state's instruction No. 4, which submitted to the jury the question of whether defendant's confession was voluntary and not obtained as a result of threat or promise; and (5) whether the right guaranteed to the defendant, under Article III, Section 14 of the constitution of this state and the Sixth Amendment to the Constitution of the United States, with regard to the assistance of counsel was violated.

This is the 4th syllabus point of *State* v. *Vance,* 146 W. Va. 925, 124 S. E. 2d 252, and is a direct quotation of Point 3, Syllabus, *State* v. *Brady,* 104 W. Va. 523, 140 S. E. 546: " 'It devolves upon the trial court in the first instance, before admitting it, to determine from evidence whether a confession of guilt has been freely and voluntarily made, and not under duress or threats or by some inducement

made or held out to the accused by someone in authority, of benefit or reward of a worldly or temporal character, or in mitigation of punishment; and the burden is upon the State to show to the satisfaction of the court facts justifying the admission of such confession.' Point 3, syllabus, *State* v. *Brady,* 104 W. Va. 523." This sentence in the opinion of that case is indicative of the fact that the record showed that the trial court ascertained preliminarily whether the written confession of the defendant was freely and voluntarily made: "The evidence was sufficient to show to the satisfaction of the court that the written statement of the defendant was freely and voluntarily made by him and that its action in admitting the statement was completely justified by the established facts." The principle heretofore applied by this Court to this question is evident from the decisions cited in the opinion of that case: *State* v. *Bruner,* 143 W. Va. 755, 105 S. E. 2d 140; *State* v. *Mayle,* 108 W. Va. 681, 152 S. E. 633; *State* v. *Brady,* 104 W. Va. 523, 140 S. E. 546; *State* v. *Richards,* 101 W. Va. 136, 132 S. E. 375; *State* v. *Zaccario,* 100 W. Va. 36, 129 S. E. 763; and *State* v. *Goldizen,* 93 W. Va. 328, 116 S. E. 687. In the *Bruner* case the third syllabus point of *State* v. *Brady* was quoted and became point six of that opinion. Bruner was convicted of murder in the first degree and sentenced to death which judgment was affirmed by this Court although one of the principal assignments of error was the action of the trial court in admitting a written statement of the defendant made to police officers of the City of Huntington on the day of the homicide. It is apparent from this quotation from the opinion that the trial judge did preliminarily hear evidence as to the admissibility of the statement before admitting it for jury consideration: "In chambers on the hearing by the trial judge on the question of whether the confession was made voluntarily, . . . ." The *Mayle* case is very close to the instant case upon its facts. The prisoner was a young man of seventeen or eighteen years of age and was without counsel or advice. The principal of a school of Taylor County wrote the prisoner's statement on a typewriter, it being made in the office of the sheriff with a member of the state police and a deputy sheriff present.

Furthermore, the defendant was advised prior to the making of the statement by an officer of the law that it "was best to tell the truth". The Court said that in view of those facts it had given "the confession painstaking consideration". The trial judge found the statement admissible, the jury heard it and found the defendant guilty and this Court held that no reversible error had been committed. In the *Brady* case the defendant was convicted of rape and upon a jury verdict of guilty the trial court sentenced him to death. One of the principal errors assigned related to the admission in evidence of a written statement alleged to have been made subsequent to the commission of the offense. After the oral statements of the defendant had been reduced to writing and before the defendant signed it by way of his mark, he being illiterate, one of the officers informed him that "he did not have to sign that paper unless he wanted to," to which the prisoner replied "I want to sign it because it is the truth." At the trial the prisoner denied making or signing any such statement. It is to be noted again that the "evidence as to the admissibility of the confession in this case was heard by the court in the absence of the jury" before being admitted as evidence before the jury. It is syllabus point three of this case that has been thereafter quoted in other decisions of this Court and particularly in the last such case, *State* v. *Vance,* as heretofore noted.

In the *Richards* case, Richards and two others being tried jointly were found guilty of murder in the first degree and sentenced to the penitentiary for the remainder of their natural lives. This Court affirmed the judgment of the trial court and the principal assignment of error discussed by this Court in the opinion was the admission into evidence before the jury of written confessions signed by each of the defendants. The facts in this case are unusual in that regard for the opinion states: "That there was a long and tedious effort, covering several weeks, to obtain these confessions, is admitted, but those immediately engaged therein were not officers of the law, nor persons with authority to make promises of rewards of any kind therefor; . . . ." Those who obtained the confessions testified that no promise was

made and furthermore that they had no authority to make such. The Court further stated in the opinion with regard to those who secured the confessions that "after the defendants had fully confessed, Fenton personally reduced their confessions to writing, and they were severally subscribed and sworn to, not before anyone engaged in the effort to obtain them, but each before a different notary public, each of whom was called as a witness by the State on the trial; and each swore positively that he had read to and explained to the affiant the nature of the confession, the meaning of the same, and that it would be used against him on the trial, and that each of the defendants freely and voluntarily signed his confession without any advice, promise or holding out of reward or personal advantage." The trial court in the absence of the jury heard all of the evidence relating to the statements of the prisoners and decided that it was proper to go to the jury before it was admitted into evidence before that body. Apparently this Court, as early as the decision of the *Richards* case and previously, was of the view that the trial judge should in all instances hear evidence as to the admissibility of an alleged confession before permitting it to be introduced in evidence before the jury as is evidenced from this statement in the *Richards* opinion: "It is well settled by the authorities that it devolves upon the court in the first instance to determine whether the confession of the accused was freely and voluntarily made, . . . ." In the *Zaccario* case the defendant was convicted of violating the prohibition laws and sentenced to the penitentiary. This Court reversed the conviction solely upon the ruling of the trial court in admitting into evidence an alleged confession by the defendant shortly after his arrest. The defendant objected to the evidence of the confession for the reason that there was no "showing that it had been freely and voluntarily made". The defendant denied the confession and testified without contradiction that he was assaulted by the jailer for refusing to make any incriminating statement. In the opinion the Court noted that, according to some authorities, "confessions of accused persons are presumed to be voluntary" but refused to adopt that view stating: "Common

judgment and human experience, however, inveigh against such theory. Confession of guilt by an accused is certainly not usual, natural or ordinary. The State should have shown by affirmative testimony as a condition precedent to its admissibility that the confession was not made under inducements of fear or favor." The only syllabus point of the case is similar to that heretofore quoted in the *Vance* case, and similar also to the pertinent syllabi of the *Richards* and *Brady* cases. The single syllabus point of the *Goldizen* case relates to the admission in evidence of a statement by the defendant admitting his guilt of the crime charged. Judge Lively in the opinion of that case discusses the reason for rejecting an admission of guilt by the defendant obtained as a result of duress or promises which is epitomized in this sentence: "Testimonial worthlessness is the underlying and fundamental principle on which confessions are rejected." He quotes also from Greenleaf on Evidence to the effect that "The only proper question is, whether the inducement held out to the prisoner was calculated to make his confession an untrue one." The opinion further states that although the Court unanimously affirmed the judgment "We do not relax the stringency of the rule governing confessions, which has prevailed for many years in this and the mother state, in holding the confession admissible evidence." The earliest case in which this issue was fully considered is *State* v. *Morgan,* 35 W. Va. 260, 13 S. E. 385. This is the fourth syllabus point of that case: "To exclude a confession, it must not only be made under inducements of favor or fear, but such inducement must come from one in authority." The defendant in that case was charged with the murder of her husband, found guilty of murder in the first degree and sentenced to the penitentiary for life. A detective, apparently private, secured certain incriminating statements from the defendant which resulted in her conviction but inasmuch as he was not an official and was not empowered to make any promises the court disregarded that element in holding the confession admissible. Again we find that the trial court had determined the admissibility of the statement before permitting the jury to hear evidence regarding it. Interesting indeed

is the action of the trial court, approved by this Court, of the admission of an alleged oral statement on the part of the defendant while she, another woman and a little girl were sleeping together in one bed that about twelve or one o'clock at night she (the witness) heard the prisoner exclaim: "They have deviled me so much about this that I don't care how it goes; I only consented to his death, and gave him the poison." It is interesting to observe that the deceased "died of a shot entering his back, passing through liver and lungs, and coming out in the breast, a deep stab in the side, and a cut or cuts on his throat severing his jugular vein, and cutting out the root of his tongue, and not at all from poison." However the court justified the admission of that oral statement on the ground that it was a question of fact for the jury to make an intelligent estimate of its weight after determining whether the statement was made while defendant was awake or asleep. Judge Brannon, the author of the opinion, then states: "It was with them to say whether it was made in sleep and was therefore worthless, or whether, though in sleep, it was but the divulgence of truth, springing from guilt which rested heavy on the soul and broke forth through voice and lips, the half conscious man revealing secrets indelibly impressed on the memory, which, if fully awake, *he* would fain have suppressed. It was with the jury to say whether she was fully awake, and forgot herself, and in this soliloquy spoke out the truth. The operation of the human mind is an enigma, and its expressions in the unconsciousness of sleep are frequently vagaries and fictions, but sometimes born of reality."

In the early days of the common law the rule was to the effect that all statements of guilt no matter what the circumstances under which they were secured were admissible. However, in the course of time, it became evident that persons, through hope or fear, would confess to crimes which had not been committed or had been committed by others and the rule evolved that a confession of a person accused of crime is inadmissible in evidence if not freely and voluntarily made. Furthermore it is evident that the involuntary statement of a person accused of a crime,

whether induced by physical or mental suffering or by promises of reward, is in violation of Article III, Section 5 of the constitution of this state which provides in part that "nor shall any person in any criminal case be compelled to be a witness against himself, . . . ." This language is almost identical to that of the Fifth Amendment to the Constitution of the United States.

Upon the authorities cited, we are of the opinion that it is the mandatory duty of the trial court, whether requested or not, to hear the evidence and determine in the first instance, out of the presence of the jury, the voluntariness of an oral or written confession by an accused person prior to admitting the same into evidence, and it is reversible error to fail to follow this procedure. For a collation of the rules obtaining in the various states regarding the admission of confessions in evidence, see *Jackson* v. *Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, 1 A. L. R. 3d 1205, 1233. Furthermore, this Court is of the view that the oral statements of the defendant by which he was alleged to have admitted his participation in the crime charged were not admissible in evidence and it was reversible error of the trial court to overrule objection thereto and permit the jury to hear such alleged oral admissions, in view of the fact that the evidence is clear by the officials who testified with regard to the statement that the accused was not, before making any statement, advised of his right to remain silent and informed that if he made a statement it could be used against him as evidence at his trial. It follows that, in view of these holdings, it was reversible error to give State's Instruction No. 4 over defendant's objection.

A majority of this Court, Judge Haymond disagreeing, is of the view that the trial court properly admitted the cigarette lighter into evidence and permitted the witness Goode to testify that it was voluntarily given to him by the defendant less than twenty-four hours after the crime was committed. It is true that the owner of the establishment which was entered was not able in his testimony to specifically state that that particular lighter was taken from his

place of business on the night of the crime but did state that it appeared to be identical with several cigarette lighters which were taken from his place of business. The defendant had denied in his statement that the cigarette lighter came from the premises ransacked and stated that he bought it at a place of business several miles from the Town of Pineville. To repeat, it is the view of the majority of this Court that there was enough evidence for jury consideration as to the lighter and if the article had been purchased at another place of business the defendant would have had an opportunity to prove that.

In view of the decision of this Court, heretofore noted, that the alleged confession is involuntary as being violative of Article III, Section 5 of the constitution of this state we do not find it necessary to determine whether the case comes within the rule of the case of *Escobedo* v. *Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, the uncontradicted evidence showing that the defendant was not informed of his right to counsel or to consult with an attorney before making the incriminating statements. For the reasons stated the judgment of the Circuit Court of Wyoming County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*