# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0873** (Wayne County 15-F-024)

**Jeremy Allen Marcum,**
**Defendant Below, Petitioner**

**FILED**

**October 20, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeremy Allen Marcum, by counsel Kerry A. Nessel and Timothy P. Rosinsky, appeals the September 6, 2016, order of the Circuit Court of Wayne County denying his requests for a new trial and post-verdict judgment of acquittal following his convictions for first-degree murder, malicious wounding, conspiracy to commit murder, and conspiracy to commit first-degree robbery. Respondent the State of West Virginia, by counsel Erica N. Peterson, filed its response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner admitted to police that in the early morning hours of November 12, 2014, he stabbed James "Red" Bundy to death and stabbed and beat Mr. Bundy's wife, Myrtle Bundy. Petitioner was arrested and gave a videotaped statement confessing to the murder of Mr. Bundy and stabbing of Ms. Bundy; the confession was given in the back of a police cruiser outside of the police station. Thereafter, petitioner was indicted for murder, malicious wounding, conspiracy to commit murder, and conspiracy to commit first-degree robbery.

On December 10, 2015, petitioner filed a motion to suppress his videotaped statement to police, arguing that he was so intoxicated that he could not knowingly and voluntarily waive his right to remain silent. Following a hearing on the motion, during which the circuit court heard testimony from two officers and petitioner's mother, the circuit court denied petitioner's motion by order entered on December 29, 2015. In that order, the circuit court found that around the time of the statement petitioner was "walking steadily," was "quite eloquent," and was "under no apparent incapacity within the cruiser." During a May 16, 2016, hearing, petitioner moved the circuit court to allow him to edit or redact certain portions of the videotaped statement he believed were irrelevant or inadmissible. The State did not object to the removal of certain utterances, so the circuit court ordered counsel to meet in advance of trial to redact portions of

1

the video. It further stated that it would give the jury an instruction indicating that the redactions were designed to remove irrelevant material. Counsel agreed on the redactions, other than petitioner's reaction to the question whether he would "do it again if [he] had the chance." Petitioner responded, "Hell yes." Petitioner filed a motion in limine to exclude that response, and the circuit court ruled from the bench that that portion of the video was relevant because it came at the end of a statement in which petitioner confessed to killing Mr. Bundy and referenced that particular crime. The circuit court also found that the prejudicial nature of that portion of the video was outweighed by the relevancy as to the question of remorse.

On May 18, 2016, petitioner filed a motion for the physical appearance and testimony of two co-defendants who intended to invoke their Fifth Amendment right against self-incrimination. The circuit court heard argument on that motion on June 2, 2016, during which counsel for those co-defendants indicated that their clients would assert their right to remain silent as to any potentially incriminating issues. The circuit court granted that motion but limited the State and the defense to ten questions of each witness in order to prevent an endless line of questioning that would amount to nothing more than a fishing expedition.

Petitioner's trial was held before a jury between June 6 and June 8, 2016. During the trial, petitioner testified and admitted to stabbing Mr. Bundy and severely stabbing and beating Mrs. Bundy. However, he claimed that before the murder co-defendant Melissa Gail Watts told him that Mr. Bundy had groped her and that co-defendant Elijah Marcum told petitioner that Mr. Bundy accused Elijah of stealing a vehicle from Mr. Bundy. Petitioner claimed that his co-defendants wanted him to "do something about it." He testified that he went to the Bundy home with the intention of confronting Mr. Bundy about the allegations but that petitioner was startled by the fact that Mr. Bundy was taller than petitioner and Mr. Bundy grabbed petitioner. Petitioner then began stabbing Mr. Bundy with a knife; the medical examiner's testimony was that Mr. Bundy was stabbed nineteen times. Petitioner's co-defendants invoked their Fifth Amendment rights against self-incrimination when called to testify. The jury ultimately found petitioner guilty of first-degree murder, malicious wounding, conspiracy to commit murder, and conspiracy to commit first-degree robbery. Petitioner was sentenced to a term of life imprisonment without the possibility of parole on the first-degree murder conviction. Petitioner's sentences for malicious wounding, conspiracy to commit murder, and conspiracy to commit first-degree robbery were ordered to run concurrently with the life sentence. Petitioner filed motions for a new trial and for post-verdict judgment of acquittal. The circuit court heard argument on those motions on August 30, 2016, and denied the same by order entered September 6, 2016. Petitioner now appeals from that order.

As we have previously stated,

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

2

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). In addition, we have held that "[a] motion for judgment of acquittal challenges the sufficiency of the evidence." *State v. Houston,* 197 W. Va. 215, 229, 475 S.E.2d 307, 321 (1996) (citing Franklin D. Cleckley, 2 *Handbook on West Virginia Criminal Procedure* 292 (2d ed.1993)). As such, we note that

> "[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 5, *State v. Broughton,* 196 W. Va. 281, 470 S.E.2d 413 (1996).

In the instant case, petitioner sets forth four assignments of error. First, he contends that the circuit court erred by permitting the State to introduce his post-arrest video statement when the video, hearing testimony, and trial testimony clearly evidence the fact that petitioner was so highly intoxicated that his statement could not be knowing and voluntary. In his short argument, petitioner asserts that a simple review of the video at issue establishes this fact as a matter of law. We have recognized that "[a] claim of intoxication may bear upon the voluntariness of a defendant's confession, but, unless the degree of intoxication is such that it is obvious that the defendant lacked the capacity to voluntarily and intelligently waive his rights, the confession will not be rendered inadmissible." Syl. Pt. 1, *State v. Hall*, 174 W. Va. 599, 328 S.E.2d 206 (1985). Here, the circuit court specifically found that around the time of the statement petitioner was "walking steadily," was "quite eloquent," and was "under no apparent incapacity within the cruiser."

This Court previously has held that "'[t]he trial court has wide discretion as to the admission of confessions and ordinarily this discretion will not be disturbed on review.' Syllabus point 2, *State v. Lamp,* 163 W.Va. 93, 254 S.E.2d 697 (1979)." Syl. Pt. 2, *State v. Woods,* 169 W. Va. 767, 289 S.E.2d 500 (1982). We, however, also held in syllabus point two of *State v. Farley,* 192 W. Va. 247, 452 S.E.2d 50 (1994), that

> [t]his Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

This Court has reviewed petitioner's videotaped statement and finds that the circuit court did not err in its findings regarding the same. While petitioner changed his responses slightly several times during the video, he seemed to understand that the video would be used in court. He frequently laughed when he talked about stabbing the "old people" and was unaware at that time that Mrs. Bundy had survived. He specifically stated that he was okay with going to jail, told his mother that he loved her, and asked his mother to take care of his brother. Petitioner clearly told the officers that he had taken Mucinex before the crime because it increased the serotonin in his brain, and he had the forethought to request that the officers give him a cup or bottle in which to spit due to his use of what appears to be smokeless tobacco. For these reasons, we find that the circuit court did not err in allowing the admission of the redacted videotaped statement.

Petitioner next argues that the circuit court erred by denying his motion in limine to redact his response of "Hell yeah!" from his videotaped statement. This answer was given in response to an officer's question as to whether he would commit the crimes again if given the opportunity. He contends that the statement was irrelevant because it does not go to the issues of premeditation, malice, or intent at the time of the crimes. Petitioner also argues that the statement's probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. He did, however, admit that the evidence is arguably relevant to a sentencing recommendation.

With regard to Rules 401, 402, and 403 of the West Virginia Rules of Evidence, this Court has stated as follows:

> 7. The West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them.

> 9. Although Rules 401 and 402 of the West Virginia Rules of Evidence strongly encourage the admission of as much evidence as possible, Rule 403 of the West Virginia Rules of Evidence restricts this liberal policy by requiring a balancing of interests to determine whether logically relevant is legally relevant evidence. Specifically, Rule 403 provides that although relevant, evidence may nevertheless be excluded when the danger of unfair prejudice, confusion, or undue delay is disproportionate to the value of the evidence.

> 10. Rule 401 of the West Virginia Rules of Evidence requires the trial court to determine the relevancy of the exhibit on the basis of whether the photograph is probative as to a fact of consequence in the case. The trial court then must consider whether the probative value of the exhibit is substantially outweighed by the counterfactors listed in Rule 403 of the West Virginia Rules of Evidence. As to the balancing under Rule 403, the trial court enjoys broad discretion. The Rule 403 balancing test is essentially a matter of trial conduct, and the trial court's discretion will not be overturned absent a showing of clear abuse.

4

Syl. Pts. 7, 9, and 10, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994). Rule 403 of the West Virginia Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The State argues that petitioner's statement that he would kill Mr. Bundy again if given the chance makes it more likely that petitioner killed with malice and premeditation and reveals his ill will toward Mr. Bundy even after he committed murder. We agree with the State's contention that it was clear that the officer's question pertained to Mr. Bundy rather than some fictitious person in the future. In addition, we find that the circuit court did not err in finding that the probative value of the statement outweighed any potential prejudice to petitioner, particularly in light of the weight of the evidence against petitioner and the entirety of his confession. Therefore, we find that the circuit court did not err in denying petitioner's motion in limine regarding this portion of the videotaped statement.

Petitioner's third assignment of error is that the circuit court violated his Fifth Amendment rights by limiting defense counsel to asking only ten questions of each co-defendant at trial. He asserts that he had the right to subpoena his co-defendants to appear at his trial, that they be sworn to testify before the jury, and that they be questioned extensively even if they intended to invoke their Fifth Amendment rights to every question. While petitioner argues such entitlement pursuant to *State v. Herbert*, 234 W. Va. 576, 767 S.E.2d 471 (2014), his interpretation of that case is not entirely accurate. In *Herbert*, we held as follows:

> In a criminal trial, when a non-party witness intends to invoke the constitutional privilege against self-incrimination, the trial court shall require the witness to invoke the privilege in the presence of the jury. The constitutional privilege against self-incrimination may only be invoked when a witness is asked a potentially incriminating question. U.S. Const. amend. V.; *W.Va. Const.* art. III, § 5.

Syl. Pt. 2, in part, *Herbert*. In the instant matter, the circuit court required that the non-party witnesses appear before the jury and invoke their Fifth Amendment rights to each question. It explained its limitation on the number of questions each party could ask of each co-defendant witness by stating that it could not let the questioning "go on as just a closing argument in the form of asking questions and then not getting an answer so that [counsel] can, then, come back later and present it to the jury in closing argument." Further, when the circuit court set forth the limitation on the number of questions, counsel for petitioner did not object or indicate in any way that he opposed the limitation. For these reasons, we find that the circuit court, at a minimum, substantially complied with the mandates set forth in *Herbert* and that petitioner waived any alleged error related to the circuit court's limitation on the number of questions for each co-defendant. *See State v. LaRock*, 196 W. Va. 294, 316-17, 470 S.E.2d 613, 635-36 (1996).

Petitioner's final argument is essentially a cumulative error argument. Without citing a single case, statute, or rule, he asserts that the circuit court's rulings were not harmless errors but were outcome determinative so that he is entitled to a new trial. We have long held that

5

[w]here the record of a criminal trial shows that the cumulative effect of *numerous errors* committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error. Syl. pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972) (emphasis added).

*State v. Tyler G.*, 236 W. Va. 152, 165, 778 S.E.2d 601, 614 (2015). We note at the outset that we do not base our findings regarding the first three assignments of error on a harmless error analysis and that we did not find merit in petitioner's allegations of error. In addition, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that petitioner's

brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

With regard to this assignment of error, petitioner has failed to comply with Rule 10. For these reasons, we find that the circuit court did not err in denying petitioner's post-trial motions.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 20, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker